1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Christine Bellini,                        No. CV-22-02188-PHX-DJH

10                    Plaintiff,               **ORDER**

11   v.

12   Patenaude & Felix APC, et al.,

13                    Defendants.

14

15          This matter arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et*

16   *seq.* ("FDCPA").  Plaintiff Christine Bellini ("Plaintiff") filed a Class Action Complaint

17   (Doc. 1) ("Complaint") bringing four Counts against Defendants Patenaude & Felix APC

18   ("Defendant Felix") and Credit Corporation Solutions Incorporated ("Defendant Credit

19   Corp") (collectively "Defendants").  Before the Court is Defendants' Motion to Dismiss

20   (Doc. 14)[1] Plaintiff's Complaint.  The Court must decide whether Plaintiff has adequately

21   stated a claim under Federal Rule of Civil Procedure 12(b)(6).  She has as to Counts II

22   and IV but has not as to Counts I and III.  Defendants' Motion is therefore granted in part.

23   **I.     Background[2]**

24          Defendants are both "debt collectors" as defined by the FDCPA.[3]  (Doc. 1 at ¶¶ 9,

25   _____

     [1] The matter is fully briefed.  (Docs. 15 (Plaintiff's Response); 16 (Defendants' Reply)).

26   [2] Unless otherwise noted, these facts are taken from Plaintiff's Class Action Complaint
     (Doc. 1).  The Court will assume the Complaint's factual allegations are true, as it must in
27   evaluating a motion to dismiss.  *See Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).

28   [3] The FDCPA defines a debt collector as "any person who uses any instrumentality of
     interstate commerce or the mails in any business the principal purpose of which is the

12).  Plaintiff is a "consumer" as defined by the FDCPA.[4]  (*Id.* at ¶ 26).  Some time prior to March 26, 2017, Plaintiff allegedly incurred a debt to nonparty Synchrony Bank, a "creditor" as defined by the FDCPA.[5]  (*Id.* at ¶ 24).  Synchrony Bank sold or otherwise assigned the rights to collect Plaintiff's alleged debt to Defendant Credit Corp, who then contracted with Defendant Felix to collect the alleged debt.   (*Id.* at ¶¶ 29–30).  Defendant Felix sent Plaintiff a collection letter that stated, *inter alia*, the following:

> **Our information shows:**
> You had a Synchrony Bank account with account number [ ]
> As of March 26, 2017 you owed:                                          $5,800.38
> Between March 26, 2017 and *today*:
> You were charged this amount in interest:              +       $0.00
> You were charged this amount in fees:                   +       $0.00
> You paid or were credited this amount toward the debt:  -  ($1,997.37)
> **Total amount of the debt *now*:**                            **$3,803.01**
>
> **How can you dispute the debt?**
> **Call or write to us by May 15, 2022, to dispute all or part of the debt**. . . .
> **If you write to us by May 15, 2022,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt.
> . . . .
>
> **What else can you do?**
> Write to ask for the name and address of the original creditor, if different from the current creditor  If you write by May 15, 2022, we must stop collection until we send you that information. . . .
> . . . .

(Doc. 1-2) (the "Letter") (emphasis added).  The Letter was not dated.  (Doc. 1 at ¶ 33).

Plaintiff construed the Letter's lack of date and references to "today" and "now" as an "attempt to improperly extort money from Plaintiff and coerce Plaintiff to pay."

---

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692(a)(6).

[4] The FDCPA defines a consumer as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).

[5] The FDCPA defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed."  15 U.S.C. § 1692a(4).

(*Id*. at ¶ 53).  To Plaintiff, the Letter seemed "suspicious, misleading, and out of character for a legitimate debt collection", and she was misled as to the amount and status of the debt because it was not associated with a particular date.  (*Id*. at ¶ 41, 36, 43).  Plaintiff thus did not pay the debt because she believed the Letter was illegitimate.  (*Id*. at ¶ 55).  Plaintiff's inaction/non-payment caused Defendants to furnish negative credit reporting against Plaintiff that was detrimental to her financial reputation.  (*Id*. at ¶ 64).

On December 28, 2022, Plaintiff filed a Complaint on behalf of herself and others similarly situated[6] alleging Defendants' debt collection practices violated the FDCPA. Plaintiff brought the following four causes of action against Defendants:

> Count I under Section 1692d[7] for harassing or abusive conduct;
>
> Count II under Section 1692e for false and misleading representations of the true character and legal status of Plaintiff's debt;
>
> Count III under Section 1692f for omitting a material term to disadvantage Plaintiff from making an educated decision with respect to her debt; and
>
> Count IV under Section 1692g for failing to provide the amount of Plaintiff's debt and engaging in collection activities and communication during the thirty-day period that overshadowed the consumer's right to dispute the debt.

(*Id*. at ¶¶ 71–92).  Plaintiff alleged Defendants' violations were willful, negligent, and intentional, and they failed to maintain reasonable procedures to avoid the violations. (*Id*. at ¶ 51).  Defendants now move to dismiss all Counts under Rule 12(b)(6).[8]  (Doc. 14).

/ / /

---

[6] Plaintiff sought to bring all Counts as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3).  (Doc. 1 at ¶ 14).  The putative class consists of all individuals with addresses in the State of Arizona to whom Defendant Felix sent a letter on behalf of Defendant Credit Corp attempting to collect a consumer debt, where the collection letter (1) provided an amount owed based on a particular date range between a certain date and "today," (2) contained no date or correspondence, and (3) was sent on or after a date one year prior to the filing of this action and on or before a date twenty-one days after the filing of this action.  (*Id*. at ¶ 15).

[7] Unless where otherwise noted, all Section references are to the FDCPA as codified under Title 15, Chapter 41 of the United States Code.

[8] Unless where otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

## II.      Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). A complaint need not contain detailed factual allegations to avoid a Rule 12(b)(6) dismissal; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation omitted).

When ruling on a motion to dismiss, the court accepts all factual allegations in the complaint as true and views the pleadings in light most favorable to the nonmoving party. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

## III.     Discussion

Defendants request the Court to dismiss this action for failing to state a claim under the FDCPA. Defendants first argue they are entitled to safe harbor for compliance with Section 1692g because the Letter "tracks the exact format" of the model validation notice that is included in the FDCPA regulations. (Doc. 14 at 8–9). Additionally, Defendants contend Plaintiff has not pled sufficient facts to sustain claims under Sections 1692d–g. (*Id*. at 11–16). Plaintiff responds that while Defendants' use of the model validation notice may entitle them to safe harbor against violation of the FDCPA regulations, it does not

1   protect them from liability under the statute itself.  (Doc. 15 at 14–21).  She further

2   contends that by not dating the Letter, Defendants' collection practices violated the FDCPA

3   because it misled her from verifying the amount of her alleged debt owed.  (*Id*. at 8–14).

4       The Court will provide an overview of the FDCPA before addressing each of

5   Defendant's arguments.

6       **A.      The Fair Debt Collection Practices Act**

7       The FDCPA is a remedial statute designed to "protect vulnerable and

8   unsophisticated debtors from abuse, harassment, and deceptive collection practices."

9   *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007); *see also*

10  15 U.S.C. § 1692(e).  The FDCPA measures a debt collector's behavior according to the

11  "least sophisticated debtor" standard.  *Clark v. Capital Credit & Collection Servs.*, 460

12  F.3d 1162, 1171 (9th Cir. 2006).  The standard entails an "objective analysis that takes into

13  account whether 'the least sophisticated debtor would likely be misled by a

14  communication.'"  *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)

15  (citing *Guerrero*, 499 F.3d at 934).  These principles "ensure that the FDCPA protects all

16  consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking, and the

17  credulous."  *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th

18  Cir. 2011) (quoting *Clark*, 460 F.3d at 1171).  "At the same time, the standard 'preserv[es]

19  a quotient of reasonableness and presum[es] a basic level of understanding and willingness

20  to read with care.'"  *Gonzales v. ICSow Fin. Servs.*, LLC, 660 F.3d 1055, 1062 (9th Cir.

21  2011) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).  The FDCPA

22  does not impose liability on debt collectors for "bizarre," "idiosyncratic," or "peculiar"

23  misinterpretations.  *Id*.

24      The FDCPA obligates debt collectors to send collection letters—or "validation

25  notices"—that "disclose information about the debt that helps consumers identify the debt

26  and facilitates resolution of the debt."  Debt Collection Practices (Regulation F), 86 Fed.

27  Reg. 5766, 5801 (Jan. 19, 2021) (codified at 12 C.F.R. Part 1006).  The requirements of

28  these validation notices are set forth under Section 1692g.  15 U.S.C. § 1692g(a).  Plaintiff

alleged Defendants' Letter violated these requirements and other provisions of the FDCPA.

### 1.    Notice Under Section 1692g(a)

Section 1692g provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing," the amount of the debt, the name of the creditor, and statements about the consumer's rights to dispute the debt and request information about the original creditor. *Id.* As to the former consumer right, validation notices must further explain the debt collector will assume the debt to be valid "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof[.]" *Id.* § 1692g(a)(3). If a consumer disputes the debt within the proscribed thirty-day period, the debt collector must (1) obtain and send verification of the debt; and (2) cease collection of the debt until it is verified to the consumer. *Id.* § 1692g(a)(4), (b). Furthermore, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *Id.*

Section 1692g does not specify the form a validation notice must take, only that it must effectively relay certain information to the consumer. Defendants agree as much. (Doc. 14 at 7). Thus, Section 1692g provides debt collectors with at least some discretion in how they wish to craft their validation notices.

### 2.    Regulation F and the Model Notice

The Consumer Financial Protection Bureau ("CFPB")[9] has recognized that the requirements under Section 1692g(a) alone "may not be sufficient for the consumer to recognize the debt[.]" Debt Collection Practices (Regulation F), 86 Fed. Reg. at 5767. This is especially so in scenarios where a debt amount "has changed over time due to interest, fees, payment, or credits, or if the debt collector has changed since an original

---

[9] The CFPB is the regulatory authority tasked with enforcing the FDCPA. *See* 15 U.S.C. § 1692l(b)(6).

collection attempt." *Id.*    Thus, on January 19, 2021, the CFPB promulgated 12 C.F.R. § 1006.34 ("Regulation F") to clarify and expand on the validation notice requirements listed in Section 1692g.   *See generally* 12 C.F.R. §§ 1006.34(a)–(c). Regulation F also contains a model validation notice (the "Model Notice"):



## B–1 Model Form for Validation Notice

North South Group
P.O. Box 123456
Pasadena, CA 91111-2222
(800) 123-4567 from 8am to 8pm EST, Monday to Saturday
www.example.com

To:   Person A
2323 Park Street
Apartment 342
Bethesda, MD 20815

Reference: 584-345

**North South Group is a debt collector.** We are trying to collect a debt that you owe to Bank of Rockville. We will use any information you give us to help collect the debt.

### Our information shows:

You had a Main Street Department Store credit card from Bank of Rockville with account number 123-456-789.

| | | |
|---|---|---|
| As of January 2, 2017, you owed: | $ | 2,234.56 |
| Between January 2, 2017 and today: | | |
| You were charged this amount in interest: | + $ | 75.00 |
| You were charged this amount in fees: | + $ | 25.00 |
| You paid or were credited this amount toward the debt: | − $ | 50.00 |
| **Total amount of the debt now:** | **$** | **2,284.56** |

### How can you dispute the debt?

- **Call or write to us by August 28, 2020,** to dispute all or part of the debt. If you do not, we will assume that our information is correct.
- **If you write to us by August 28, 2020,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at www.example.com/dispute.

### What else can you do?

- **Write to ask for the name and address of the original creditor,** if different from the current creditor. If you write by August 28, 2020, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept such requests electronically at www.example.com/request.
- **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.
- Contact us about your payment options.
- Póngase en contacto con nosotros para solicitar una copia de este formulario en español.

**Notice: See reverse side for important information.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Mail this form to:
North South Group
P.O. Box 123456
Pasadena, CA 91111-2222

Person A
2323 Park Street
Apartment 342
Bethesda, MD 20815

### How do you want to respond?

*Check all that apply:*
- ☐ I want to dispute the debt because I think:
  - ☐ This is not my debt.
  - ☐ The amount is wrong.
  - ☐ Other (please describe on reverse or attach additional information).
- ☐ I want you to send me the name and address of the original creditor.
- ☐ I enclosed this amount: $ _____

Make your check payable to *North South Group.* Include the reference number 584-345.

- ☐ Quiero este formulario en español.

*Id.* pt. 1006, app. B (Model Form B–1).

The CFPB established a safe harbor provision to incentivize debt collectors to use the Model Notice or a "substantially similar form."  Debt Collection Practices (Regulation F), 86 Fed. Reg. at 5786–87; *id.* at 5820 ("The [CFPB] determines that a safe harbor is appropriate because the model validation notice will effectively disclose information required by [Regulation F] and the safe harbor will incentivize debt collectors to use the model notice.").  Regulation F provides that "[a] debt collector who uses Model Form B–1 complies with the information and form requirements of paragraphs (c) and (d)(1) of this section[.]"  12 C.F.R. § 1006.34(d)(2)(i).  The CFPB further clarified that safe harbor does not apply if a debt collector uses the Model Notice but conducts other collection activities during the validation period.  Debt Collection Practices (Regulation F), 86 Fed. Reg. at 5835.

**B.    The Model Notice Does not Necessarily Preclude A Debt Collector's Liability Under the FDCPA**

The Court will first clarify why an undated validation notice may still pose FDCPA violations notwithstanding its use of the Model Notice.  Defendants' primary theory is because they used the Model Notice, the Letter cannot violate Section 1692g or Regulation F as a matter of law.  (Doc. 14 at 8–9.)  They argue Regulation F and the Model Notice are entitled to judicial deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984) and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  (*Id.* at 4–10.)  Defendants further reason Regulation F's safe harbor provision shields them from liability under Section 1692g because Regulation F interprets and implements Section 1692g.  (Docs. 14 at 8–9; 16 at 1–5).

Plaintiff disagrees.  She argues nothing in the FDCPA says use of the Model Notice provides safe harbor for compliance with Section 1692g. (Doc. 15 at 14–21).  She further contends a date is a basic piece of information that is critical to informing the least sophisticated consumer that other information required under the FDCPA are ascertainable and verifiable—namely, the amount of the debt owed and the bounds of the thirty-day dispute period.  (*Id.* at 8, 5).  She maintains a missing date can mislead consumers and

1    therefore violate the FDCPA.  (*Id*. at 4).

2         The Court finds Plaintiff's position is the more reasonable one.

3                   **1.      The Model Notice is not a Strict Limitation**

4         To start, nothing in the FDCPA mandates a validation notice to take a certain form,

5    only that it effectively relays requisite information to the consumer.  *See* 15 U.S.C.

6    1692g(a);   12 C.F.R. §§ 1006.34(a)–(c).       Although   the   CFPB   initially   proposed

7    Regulation F should require validation notices to take the same form as the Model Notice,

8    it ultimately decided against any such requirement.  Debt Collection Practices (Regulation

9    F), 86 Fed. Reg. at 5787.    So, the CFPB suggested the Model Notice as a template.

10   *Id*. at 5789 ("[D]ebt collectors *may* use the model validation notice, specified variations of

11   the model notice, or a substantially similar form if providing validation notices[.]")

12   (emphasis added); *id*. at 5786 (explaining Regulation F also "describes optional disclosures

13   that debt collectors may, but are not required to, provide with the validation information").

14   Like Section 1692g, Regulation F affords debt collectors with discretion when drafting

15   their validation notices, including whether and to what extent to use the Model Notice.

16   *See id*. at 5789 ("Different debt collectors may design their communications in different

17   ways, and the Bureau does not believe it is necessary or warranted to specify such details,

18   as long as the disclosure satisfies the clear and conspicuous standard.").

19        Room for discretion, however, leaves room for insufficiency.  When a debt collector

20   opts to use the Model Notice, it must remain vigilant in inputting accurate and necessary

21   information.  The CFPB drafted the Model Notice with following fields that are obviously

22   fictitious: a placeholder website "www.example.com"; placeholder dates "January 2,

23   2017" and "August 28, 2020"; a placeholder bank "Main Street Department Store credit

24   card from Bank of Rockville"; a placeholder account number "123-456-789"; and a

25   placeholder debtor "Person A".  Although the CFPB did not expressly signal that certain

26   fields must be altered accordingly, the necessity to do so is self-evident.[10]  A debt collector

27   must still tailor the Model Notice to reflect the true and correct details of the specific debt

28   

---

[10] For example, it would be false and misrepresentative for a debt collector to use the Model
Notice but convey to a consumer they owe a debt on their account "123-456-789".

1    the debt collector seeks.  When they fail to adequately do so, they run the risk of violating

2    the FDCPA.

3         Accordingly, the mere fact that Defendants used the Model Notice as a debt

4    validation notice does not automatically prevent the Court from finding FDCPA violations.

5    The Court must go on to inquire whether they used the Model Notice in a manner that

6    effectively conveyed requisite information to consumers.  *See Swanson v. Southern Oregon*

7    *Credit Servs, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1989) ("The statute is not satisfied merely

8    by inclusion of the required debt validation notice; the notice Congress required must be

9    conveyed effectively to the debtor").  The Court rejects Defendants' proposition that they

10   complied with the FDCPA, as a matter of law, by using the Model Notice.  *See Roger v.*

11   *GC Servs. Ltd. P'ship*, 2023 WL 2124298, at *5 (S.D. Fla. Feb. 9, 2023) ("[U]se of the

12   Model Form alone does not provide a *per se* bar to Plaintiff's claims.").

13        **2.      Regulation F's Safe Harbor Does not Apply to the FDCPA Statute**

14        Furthermore, the Court agrees with Plaintiff that while the Model Notice may entitle

15   Defendants to safe harbor against violation of Regulation F, it does not necessarily protect

16   them from liability under the FDCPA statute itself.  (Doc. 15 at 11).  Regulation F states

17   that "[a] debt collector who uses Model Form B–1 complies with the information and form

18   requirements of paragraphs (c) and (d)(1) of *this section*[.]"  12 C.F.R. § 1006.34(d)(2)(i)

19   (emphasis added).  It is expressly limited to Regulation F and makes no mention of

20   compliance with any section of the FDCPA.  *See Roger*, 2023 WL 2124298, at *4–5

21   (finding Regulation F's safe harbor was not intended to be a broader statutory one).  The

22   CFPB repeatedly highlighted the safe harbor's limited application.  *See* Debt Collection

23   Practices (Regulation F), 86 Fed. Reg. at 5835, 5855 ("The safe harbor protects only the

24   use of the [M]odel [] [n]otice to comply with the information and form requirements of §

25   1006.34(c) and (d)(1)."); *id.* at 5787 ("[T]he final rule provides certain safe harbors for

26   compliance with the information and form requirements in § 1006.34(c) and (d)(1) for debt

27   collectors who use the model validation notice . . . ."); *id.* at 5789 ("[A] debt collector who

28   uses the model validation notice, specified variations of the model notice, or a substantially

1    similar form, receives a safe harbor for the information requirements in § 1006.34(c) and

2    for the clear-and conspicuous requirement in § 1006.34(d)(1).").

3            In light of the above implications of the Model Notice and Regulation F's safe

4    harbor provision, the Court need not engage in a *Chevron* analysis.  The Court rejects

5    Defendants' proposition that the Letter entitles them to safe harbor from FDCPA liability.

6            **C.     Plaintiff's Counts**

7            Having clarified that Defendants' use of the Model Notice does not prevent this case

8    from moving forward, the Court now turns to Plaintiff's Counts.  To state a claim under

9    the FDCPA, a plaintiff must allege "'factual content that allows the court to draw the

10   reasonable inference' that the defendants: (1) are debt collectors, and (2) used 'any false,

11   deceptive, or misleading representation or means in connection with the collection of any

12   debt' or otherwise engaged in conduct that violates a provision of the FDCPA."  *Banks v.*

13   *ACS Educ.*, 638 F. App'x 587, 590 (9th Cir. 2016) (quoting *Schlegel v. Wells Fargo Bank,*

14   *NA*, 720 F.3d 1204, 1208 (9th Cir. 2013)).  A debt collector's behavior under the FDCPA

15   is measured according to an objective "least sophisticated debtor" standard.  *Clark*, 460

16   F.3d at 1171; *see supra* Section III.A.  As a strict liability statue, the FDCPA does not

17   ordinarily require proof of intentional violation.  *Gonzales*, 660 F.3d at 1061.

18           As to the first element, Defendants are undisputedly debt collectors under the

19   FDCPA.  As to the second element, Counts I–IV allege Defendants' representations in the

20   Letter violated Sections 1692d–g.  The Court will address Count IV before turning to

21   Plaintiff's remaining Counts.

22           **1.     Count IV**

23           Plaintiff's Count IV claims Defendants violated the validation notice requirements

24   under Sub-sections 1692g(a) and (b).[11]  See *supra* Section III.A.

25           **a.     Sub-section 1692g(a)**

26           First, Plaintiff alleged Defendants failed to adequately represent the amount of

27   Plaintiff's debt under Sub-section 1692g(a) when "pegging it to an unknown date."

28   _____
[11] Unless where otherwise noted, all Sub-section references are to the FDCPA as codified
under Title 15, Chapter 41, of the United States Code.

(Doc. 1 at ¶ 89).  It is true that nothing in the FDCPA or its regulations expressly instruct debt collectors to date validation notices.  It is also true that the Model Notice does not itself contain a date of correspondence.  However, grounding a validation notice in a date is especially important in the FDCPA context for a number of reasons.  For example, as emphasized by the CFPB, Sub-section 1692g(a) requires that a consumer must be able to verify the amount of their debt as it may change over time due to interest, fees, payment, or credits.  *See* Debt Collection Practices (Regulation F) 86 Fed. Reg. 5766, 5767 (Jan. 19, 2021); *see also* 15 U.S.C. § 1692g(a)(1) (validation notices must state the amount of the debt owed).  Moreover, a consumer who has thirty days to challenge a debt's validity under the FDCPA must be able to verify when that thirty-day accrual period runs.  *See* 15 U.S.C. § 1692g(a)(3) (validation notices must state the consumer's right to dispute the debt within thirty days after receipt of the notice).  A contemporaneous date is axiomatic to ensuring this information is relayed to the consumer as mandated by Sub-section 1692g(a).

Here, Defendants used the Model Notice to draft the Letter, but chose not to input firm dates in the "today" and "now" fields.  (*Compare* Doc. 1-2 *with* 12 C.F.R. pt. 1006, app. B).  And, when accepting Plaintiff's allegations as true, Defendants' omission of a date (1) misled Plaintiff into thinking the Letter was illegitimate and (2) prevented her from verifying the amount due.[12]  (Doc. 1 at ¶¶ 35–59).  Plaintiff further explained the impact the lack of date had when she read the Letter:

> From the face of the Letter, it is [was] impossible to determine whether the amount of the debt, $3,803.01, is accurate, because it [was] impossible to determine whether the $0 accruals in interest and/or fees and the $1,997.37 in credits applied to the account between March 26, 2017 and "today" make the "total amount of the debt now" at all relevant anymore.

(Doc. 15 at 12).

By claiming Defendants used the Model Notice in a manner that failed to convey

---

[12] Plaintiff also alleged in her Response that the lack of date "overshadowed Plaintiff's validation rights" because she did not have a method to verify the thirty day dispute period. (Doc. 15 at 8).  Because these new factual allegations were raised for the first time in the Response, the Court will not consider them for the purpose of this Order. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  To the extent Plaintiff wishes to add these allegations in her Count IV, she may do so in an amended complaint.

information required by the FDCPA, Plaintiff has sufficiently stated a claim under Sub-section 1692g(a).  This conclusion is consistent under the objective, least sophisticated consumer standard, which seeks to ensure that "even the least sophisticated debtor is able to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process."  *Clark*, 460 F.3d at 1171.  To be clear, it is not Defendants' use of the Model Notice that serves the basis for Plaintiff's claim; rather, it is Plaintiff's allegation that Defendants' failed to sufficiently tailor the Model Notice to the facts surrounding the debt they sought to collect.

### b.     Sub-section 1692g(b)

Second, Plaintiff alleged Defendants engaged in collection activities and communication during the thirty-day dispute period "that overshadowed and/or was inconsistent with the disclosure of the consumer's right to dispute the debt" under Sub-section 1692g(b).  (Doc. 1 at ¶ 92).  Indeed, if a consumer disputes the debt within the proscribed thirty-day period, Sub-section 1692g(b) obligates the debt collector to (1) cease collection of the debt until it is verified to the consumer; and (2) cease all activities that overshadow the debt collector's dispute and validation rights.  15 U.S.C. § 1692g(b).  But Plaintiff did not set forth any additional facts describing Defendants' collection activities apart from sending the Letter as an initial communication.  Plaintiff simply stated "labels and conclusions" under Sub-section 1692g(b) without "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.  This will not do.  *Id.*

When taking the allegations in the Complaint as true, as the Court must, Plaintiff's Count IV adequality states a claim for relief under Sub-section 1692g(a).  The Court, however, will dismiss Plaintiff's Sub-section 1692g(b) claim under Rule 12(b)(6).

### 2.     Count I: Section 1692d

Plaintiff's Count I claims Defendants violated Section 1692d, which prohibits debt collectors from engaging in conduct having the natural consequence to harass, oppress, or abuse any person in connection with the collection of a debt.  15 U.S.C. § 1692d.  While nonexclusive, Section 1692d sets forth six circumstances that constitute harassing or

abusive conduct:

> (1)    using or threating to use violence or other criminal means to harm the physical person, reputation, or property of any person;
>
> (2)    using obscene or profane language that would abuse the hearer or reader;
>
> (3)    publishing of a list of consumers who allegedly refused to pay debts;
>
> (4)    advertising sale of a debt to coerce payment of the debt;
>
> (5)    repeatedly or continuously calling any person "with intent to annoy, abuse, or harass"; or
>
> (6)    placing telephone calls without disclosing the caller's identity.

15 U.S.C. § 1692d(1)–(6); *see Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1516 (9th Cir. 1994) (finding that multiple "threatening and intimidating calls to a consumer at an inconvenient time or place could rationally support a jury finding of harassing conduct").

Plaintiff alleged Defendants harassed or abused her by sending her an undated validation notice. (Doc. 1 at ¶¶ 71–75). The Court finds that sending a single letter without a date does not rise to the level of threats and intimidations exemplified in Section 1692d. *Cf. Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1228 (E.D. Cal. 2010) ("[S]ome conduct does not constitute harassment as a matter of law") (collecting cases). Thus, Plaintiff has not alleged harassment or abuse under the FDCPA as a matter of law. The Court will therefore dismiss Count I under Rule 12(b)(6).

### 3.    Count II: Section 1692e

Plaintiff's Count II claims Defendants violated Section 1692e, which prohibits debt collectors from using false, deceptive, or misleading representations or means in connection with their debt collection practices. 15 U.S.C. § 1692e. In the Ninth Circuit, Section 1692e claims must suffice a materiality requirement as a "corollary" to the least sophisticated debtor standard. *Afewerki v. Anaya L. Grp.*, 868 F.3d 771, 775 (9th Cir. 2017); *Donohue*, 592 F.3d at 1033–34. That is, "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under

1   [Section] 1692e." *Afewerki*, 868 F.3d at 775 (quoting *Donohue*, 592 F.3d at 1033).

2   Material false representations are those that could "cause the least sophisticated debtor to

3   suffer a disadvantage in charting a course of action in response to the collection effort."

4   *Id*. at 776 (internal citation omitted).  By contrast, immaterial false representations are those

5   that are "literally false, but meaningful only to the 'hypertechnical' reader."  *Id*.

6         Section 1692e specifies sixteen acts that are deemed to be false, deceptive, or

7   misleading.  15 U.S.C. § 1692e(1)–(16).  Among those, Plaintiff claimed Defendants

8   violated Sub-sections 1692e(2)(A) and (10).  (Doc. 1 at ¶¶ 76–80).

9                        **a.**       **Sub-section 1692e(2)(A)**

10        Sub-section 1692e(2)(A) holds debtors liable for falsely representing the character,

11  amount, or legal status of any debt[.]" 15 U.S.C. 1692e(2)(A).  Plaintiff alleged the undated

12  Letter was out of character for a legitimate debt collection, suspicious, and misleading.

13  (Doc. 1 at ¶ 41).  She claimed she could not understand exactly how much of the debt was

14  currently owed because the amount was defined on a "nebulous date."  (*Id*. at ¶¶ 39, 41).

15  She further stated she was "misled as to the status of the subject debt, for it was not

16  associated with a particular date."  (*Id*. at ¶ 36).

17        The Ninth Circuit explained that "[w]hether a debt is legally enforceable is a central

18  fact about the character and legal status of that debt."  *Kaiser v. Cascade Capital, LLC*, 989

19  F.3d 1127, 1134 (9th Cir. 2021) (quoting *McMahon v. LVNV Funding, LLC*, 744 F.3d

20  1010, 1020 (7th Cir. 2014)) (holding a debt collector violated the FDCPA when attempting

21  to collect a time barred debt through threat of suit).  Defendants argue the lack of date has

22  nothing to do with the character or legal status of a debt.  (Doc. 14 at 11).  The Court agrees

23  Plaintiff has not alleged that the Letter's lack of date falsely represented enforceability of

24  her debt to Synchrony Bank.[13]  *See Kaiser*, 989 F.3d at 1134.  Moreover, although a missing

25  date could cast ambiguity as to the current amount owed on Plaintiff's debt at a given time,

26  the Court finds the lack of date is not an affirmatively false representation of the amount

---

27  [13] Defendants cite to Seventh Circuit case law for the proposition that the "character" of a
28  debt refers to the "kind of obligation", such as a secured auto loan or unsecured credit card
    debt.  (Doc. 14 at 11–12 citing *Rhone v. Med. Bus. Bureau, LLC*, 915 F.3d 438, 440 (7th
    Cir. 2019).  A date does not go to the character of a debt under either standard.

owed.  *See Heffington v. Gordon*, 2018 WL 3763799, at *3 (D. Or. Aug. 8, 2018) ("By its terms, [Section] 1692e(2)(A) prohibits only 'false' representations about a debt's character, amount, or legal status— not representations that are merely misleading or deceptive."). Nor has Plaintiff alleged that the debt she allegedly owes to Synchrony Bank does not amount to $3,803.01, as stated in the Letter.  (*See* Doc. 1-2).

### b.      Sub-section 1692e(10)

Sub-section 1692e(10) is a "catchall" provision that holds debtors liable for "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  *Gonzales*, 660 F.3d at 1062; 15 U.S.C. § 1692e(10).  "[I]t is well established that '[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.'"  *Gonzales*, 660 F.3d at 1062 (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006)).  Thus, the issue is whether the Letter's lack of date renders its terms susceptible to a materially inaccurate interpretation.  If so, Plaintiff has sufficiently stated a claim under Sub-section 1692e(10)

Plaintiff claimed "[t]here [was] no way to determine from the Letter which date 'today' and 'now' refer to, as the Letter is not dated" and the vague terms made the Letter appear as an illegitimate "attempt to improperly extort money from Plaintiff and coerce Plaintiff to pay."  (Doc. 1 at ¶ 25, 53).  Plaintiff alleged that "[b]y withholding the date of the letter, Defendant[s] withheld a material term from Plaintiff which made it confusing for her to understand the nature of the subject debt."  (*Id*. at ¶ 43).  For example, she states that when the balance of the debt is not static, a date range must be provided for her to understand exactly how much of the debt is owed.  (*Id*. at ¶ 39).  On the other hand, Defendants argue the words "today" and "now" are unambiguous.  (Doc. 14 at 13).  They reason "[t]he only plain, rational interpretation of the letter is that the 'Total amount of the debt now' is the present tense, whenever the consumer reads the letter."  (*Id*. at 13–14).

Because the consumer can read the Letter "whenever," Defendants' reasoning that "today" and "now" have one meaning is inherently flawed.  The exact opposite is true—it

is possible the consumer could read the Letter on any given day of the year, which gives the temporal terms a wide range of potential meanings.  Additionally, to the least sophisticated debtor, the phrases "today" and "now" could suggest circumstances other than the day the debtor reads the Letter, for example: the day the debt collector printed the letter; the date the debt collector placed the letter in the mail; or the date the consumer received the letter in the mail.  Plaintiff further alleged the phrases "today" and "now" suggested to her that the Letter was illegitimate.  (Doc. 1 at ¶¶ 38, 41, 53).

Moreover, uncertain meanings of "today" and "now" are material for multiple reasons: differing dates could affect the amount of the debt (due to changes in interest, fees, payment, or credits) and alter the bounds of the thirty-day validation period.  *See supra* Section III. C(1)(a).  Not knowing the relevant date could therefore "cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort."  *Afewerki*, 868 F.3d at 776.  Plaintiff indeed alleged as much. (Doc. 1 at ¶¶ 39, 43, 54, 55).  Furthermore, that Plaintiff has stated a claim under Section 1692g lends as additional support that she has stated a claim under Section 1692e(10).  *See supra* Section III.C(1); *c.f. Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1057–58 (9th Cir. 2002) (a finding that a notice did not violate Section 1692g(a) necessarily means the notice did not violate Section 1692e(10)).

When taking the allegations in the Complaint as true, as the Court must, Plaintiff's Count II adequality states a claim for relief under Sub-section 1692e(10).  The Court, however, will dismiss Plaintiff's Sub-section 1692e(2)(A) claim under Rule 12(b)(6).

### 4.    Count III: Section 1692f

Plaintiff's Count III claims Defendants violated Section 1692f, which prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Whether conduct violates this Section is determined under the least sophisticated consumer standard.  *Donohue*, 592 F.3d at 1030.  The materiality requirement for Section 1692e claims also applies to Section 1692f claims.  *Id*. at 1034.

Section 1692f specifies eight acts that are deemed to be unfair or unconscionable:

(1)    collection of an amount that is not expressly authorized;

(2)    acceptance of a payment instrument postdated by more than five days in certain circumstances;

(3)    solicitation of a postdated payment instrument for the purpose of threatening or instituting criminal prosecution;

(4)    depositing or threatening to deposit any postdated payment instrument prior to its indicated date;

(5)    "causing charges to be made to any person for communications by concealment of the true purpose of the communication";

(6)    "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property" under certain circumstances;

(7)    communicating about a debt by post card;

(8)    using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(1)–(8).  The Ninth Circuit has not yet articulated a standard for 'unfair or unconscionable' conduct outside of these eight examples.  *Cunningham v. Meridian Credit Grp., LLC*, 2019 WL 643966, at *4 (C.D. Cal. Feb. 11, 2019).   "However, district courts in the Ninth Circuit have held that, when the conduct alleged is not 'remotely similar' to the enumerated examples, the conduct is not 'unfair or unreasonable' within the meaning of § 1692f."  *Id.* (collecting cases).

Plaintiff did not claim Defendants engaged in any of the above eight acts.  Rather, Plaintiff alleged Defendants violated Section 1692f "[b]y omitting a material term [(the date of correspondence)] from the dunning letter to disadvantage the Plaintiff from making an educated decision regarding the subject debt."  (Doc. 1 at ¶¶ 84).  Plaintiff maintains these acts are, "at the very least, unfair" under Section 1692f.  (Doc. 15 at 9).  Defendants argue the absence of a date in a letter is unlike any of the eight acts under Section 1692f

1    and "is not unscrupulous nor affronts a sense of justice or reasonableness." (Doc. 14 at 14).

2    The Court agrees with Defendants.

3    Plaintiff's allegations of unfairness are insufficient even when accepted as true.  By

4    simply claiming Defendants acted unfairly, Plaintiff pled facts that are "merely consistent"

5    with Defendants' liability under the language of Section 1692f, and "stops short of the line

6    between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678

7    (citation omitted).  Plaintiff has neither cited to any legal support within this circuit finding

8    an undated Letter "unfair" within the meaning of the statute nor explained how it is similar

9    to the eight acts listed above.   Plaintiff's "naked assertions", without more, do not

10   adequately state a Section 1692f claim under Rule 12(b)(6) standards. *Twombly*, 550 U.S.

11   at 555.  The Court will therefore dismiss Count III under Rule 12(b)(6).

12   **IV.    Conclusion**

13   An undated Model Notice may still pose FDCPA violations if it does not effectively

14   convey requisite information to consumers.  The Model Notice entitles debt collectors to

15   safe harbor for compliance with Regulation F, but does not guarantee compliance with all

16   of the FDCPA's provisions.   Under these principles, the Court finds Plaintiff has

17   adequately stated Sub-section 1692e(10) claims under Count II and Sub-section 1692g(a)

18   claims under Count IV.  However, Plaintiff has not sufficiently stated Section 1692d claims

19   under Count I; Sub-section 1692e(2)(A) claims under Count II; Section 1692f claims under

20   Count III; or Sub-section 1692g(b) claims under Count IV.  The Court will dismiss those

21   claims without prejudice.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Patenaude & Felix APC and Credit Corporation Solutions Incorporated's Motion to Dismiss (Doc. 14) is **GRANTED** in part and **DENIED** in part. Plaintiff's Section 1692d claims under Count I; Sub-section 1692e(2)(A) claims under Count II; Section 1692f claims under Count III; and Sub-section 1692g(b) claims under Count IV are **DISMISSED without prejudice.**

Dated this 26th day of September, 2023.

Honorable Diane J. Humetewa
United States District Judge